**IT IS ORDERED as set forth below:**



**Date: March 2, 2018**

_____

**Paul W. Bonapfel**
**U.S. Bankruptcy Court Judge**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE: | : |
| | : Case No. 17-66479-pwb |
| KEVIN KEAVENEY, | : |
| Debtor. | : Chapter 7 |
| _____ | : |

**ORDER ON (1) REQUESTS OF MARGOT BRENNAN [24, 28];
(2) MOTION TO SEAL [31]; and (3) PUBLIC ACCESS TO
PAPERS AT DOCKET NOS. 24 AND 28**

The assets in this Chapter 7 case, filed on September 21, 2017, included the claims of the Debtor, Kevin Keaveney, in three pending qui tam lawsuits: (1) Kevin Keaveney, et al., v. VT Aepco, Inc., and VT Group, LLC, Case No. 1:16-CV-00557, U.S. District Court, Eastern District of Virginia; (2) Kevin Keaveney, et al., v. SRA International, Inc., et al., Case No. 1:13-CV-00855, U.S. District Court, District of Columbia; and (3) Kevin Keaveney, et al., v. Concurrent Technologies Corporation, Case No. 1:12-CV-00015-KBJ, U.S. District Court, District of Columbia.

Margot Brennan is a co-plaintiff in the lawsuits. She is also the former spouse of the Debtor and a creditor.

Lynne Bernabei and Alan R. Kabat (the "Qui Tam Attorneys") represented Mr. Keveaney and Ms. Brennan in the qui tam litigation. It appears that the Qui Tam Attorneys have withdrawn, or are seeking to withdraw, from their representation, but their current status is not material to the issues before the Court.

On January 10, 2018, Ms. Brennan filed papers raising various issues with regard to the qui tam lawsuits. [24]. She supplemented the papers on January 24, 2018. [28].

According to the first page of Ms. Brennan's papers, they contain the following: (1) Objection to the "Trustee's Assessment/Distribution of Debtor's Assets"; (2) Assertion of "multiple" conflicts of interest that exist between (a) Debtor and "Trustee's Appointed 'Special Counsel'", which she asserts are the Qui Tam Attorneys; (b) Debtor's "Priority Creditor," which is Ms. Brennan, and "Special Counsel," again, the Qui Tam Attorneys; and (c) the Trustee and the "Priority Claimholder/Qui Tam Stakeholder," which is Ms. Brennan; (3) Assertion of her "Proof of Claim" against the qui tam lawsuits; and (4) a proposal for the prosecution of the qui tam litigation. [28 at 1].

(Ms. Brennan's characterization of the Qui Tam Attorneys as "special counsel" to the Trustee is inaccurate because the Trustee never retained them. Employment of attorneys by a Chapter 7 trustee requires the filing of an application for approval of their employment and an order of this Court that does so. 11 U.S.C. § 327. The Trustee never filed an application to employ the Qui Tam Attorneys. The Qui Tam attorneys were not the Trustee's "special counsel.")

The Court scheduled a status conference with regard to these matters for February 20, 2018. [25].

On January 25, 2018, the Trustee filed a Notice of Abandonment of Mr. Keaveney's interests as a plaintiff in the qui tam lawsuits. [26] No one objected to the Trustee's abandonment of Mr. Keaveney's claims within the required time. Accordingly, the assets have been abandoned by operation of law. Fed. R. Bankr. P. 6007(a).

The result of the abandonment is that any and all interests that Mr. Keaveney has in his claims and rights in the qui tam lawsuits are no longer property of his Chapter 7 estate. Mr. Keaveney, therefore, once again owns and controls whatever interests he has in the claims and rights he asserts in the qui tam lawsuits, subject to whatever interests Ms. Brennan or any other entity may have.

On February 15, 2018, the Trustee filed his Report of No Distribution, evidencing his conclusion that this Chapter 7 estate has no assets to be administered. Because the estate has no assets, no distributions to creditors will occur. Whether Ms. Brennan has an allowed proof of claim and any determination of the allocation of rights arising out of the qui tam litigation as between her and Mr. Keaveney or any other party, therefore, do not matter in this case.

The Trustee has withdrawn his motion to extend the time to object to Mr. Keaveney's discharge [29], no other objections have been timely filed, and the deadline for filing objections to his discharge has expired. Thus, the only things left to do in this case are to issue Mr. Keaveney's discharge, discharge the Trustee, and close the case. These are routine matters that ordinarily happen as a matter of course.

On February 1, 2018, the Qui Tam Attorneys filed a motion to seal portions of the exhibits to the papers that Ms. Brennan filed. [31]. The Court entered an order restricting access

to Ms. Brennan's papers pending further order of the Court and scheduled a hearing on the motion for the same time as the status conference. [33].

The Court conducted the status conference and hearing on February 20, 2018. Present at the hearing were Robert Bartlett of the Ragsdale, Beals law firm, representing the Trustee; Ms. Brennan; and Mr. Keaveney. Mr. Kabat participated telephonically.

For reasons stated at the status conference and herein, the Court will dismiss Ms. Brennan's requests and deny any further relief to the Qui Tam Attorneys, without prejudice.

### Ms. Brennan's Requests

Ms. Brennan asserts an interest in the qui tam claims; requests that the Court determine her interest in the lawsuits and compel the Trustee to proceed with the qui tam litigation in the manner she proposes; and states a "Proof of Claim." All of these matters are moot in this Chapter 7 case in view of the Trustee's abandonment of the qui tam claims and the Trustee's Report of No Distribution. Any continuing issues Ms. Brennan has about her interest in any recoveries in the litigation or the manner in which the qui tam lawsuits have been or will be prosecuted are with Mr. Keaveney and the Qui Tam Attorneys, not the Trustee or his attorneys.

To the extent Ms. Brennan complains that the Trustee and his attorneys attempted to exercise control of her claims in the qui tam lawsuits or somehow prejudiced her rights as a party to those lawsuits, the simple answer is that they obviously could not do so as a matter of law. Even if, as she alleges, the Trustee or his attorneys asserted that the estate had exclusive rights to control the prosecution of the lawsuits or to recover all of the proceeds from them (*i.e.*, to exclude her from any recovery), Ms. Brennan had the right to state and defend her rights and positions as a co-plaintiff. Similarly, as a party in the qui tam lawsuits, she had the right to be heard and take such actions she thought were necessary to protect and advance her rights and

4

interests. Nothing the Trustee or his attorneys said or did could change these fundamental legal principles.

The fact that the Trustee and his attorneys communicated with the Qui Tam Attorneys about the lawsuits and obtained information from them does not provide any basis for any claims against the Trustee or his attorneys. The Trustee and his attorneys had the right to consult the lawyers who were handling the qui tam litigation in order to determine whether it was in the interests of the estate to pursue the litigation. The Trustee had the same rights as Mr. Keaveney to obtain information from them and to discuss the case with them. Any issues Ms. Brennan has about conflicts of interest that might have existed if the Trustee had employed the Qui Tam Attorneys, or had applied for approval to retain them, might have required the Court's determination if the Trustee had sought to retain the Qui Tam Attorneys, but they are now immaterial because the Trustee never took such action.

To the extent that Ms. Brennan seeks relief because she thinks that the Qui Tam Attorneys breached some duty to her in their communications and dealings with the Trustee or in their handling of the qui tam lawsuits after the filing of Mr. Keaveney's bankruptcy case, any possible claims she may have against them are of no concern to the administration of this case and are not a proper subject for this Court to consider. This case involves Mr. Keaveney's property interests, not Ms. Brennan's.

In any event, Ms. Brennan's requests are procedurally improper. Because she has requested that the Court enter orders granting her various types of relief, her papers are properly construed as a motion. See Fed. R. Bankr. P. 9013. Except, possibly, for her requests that ask the Court to tell the Trustee how to proceed with the qui tam lawsuits, which are moot in view of

5

the Trustee's abandonment of them, the Court cannot consider them in a Rule 9013 motion filed in the bankruptcy case. See Fed. R. Bankr. P. 7001.

For all of the reasons stated above and at the status conference, the Court will dismiss Ms. Brennan's requests, construed as a motion, both without prejudice.

### Motion of the Qui Tam Attorney

The motion of the Qui Tam Attorneys seeks to seal certain portions of exhibits attached to Ms. Brennan's requests because they "reflect" attorney-client communications and work product.

With regard to the attorney-client privilege ground, the Court does not understand how an attorney is entitled to insist on the attorney-client privilege when the client (who controls the privilege) discloses something that may be subject to the privilege. With regard to the work product ground, the Court does not understand how the information Ms. Brennan disclosed would be work product.

The Court can conceive of no lawful ground to seal the papers in view of the statutory mandate in 11 U.S.C. § 107(a) that papers filed in a bankruptcy case are "public records and open to examination by an entity at reasonable times without charge" and will deny the request to seal, without prejudice. If the Qui Tam Attorneys have additional authorities or arguments as to why the papers should be sealed, they may file a new motion within 14 days from the date of entry of this Order that addresses the issues the Court has identified.

In its Order entered on February 7, 2018, the Court directed the Clerk to restrict public access to Ms. Brennan's papers pending a hearing on the motion. [33]. Out of an abundance of caution, the Court will continue the restriction on public access. Any entity desiring to view

6

these papers may file an application to lift the restriction and may do so without the necessity of reopening the case once it is closed.

**IT IS, THEREFORE, HEREBY ORDERED AND ADJUDGED as follows:**

1. Ms. Brennan's requests for relief [24, 28] as set forth in her papers filed on January 10 and 24, 2018, are dismissed, without prejudice.

2. The motion of the Qui Tam Attorneys [31] to seal certain portions of Ms. Brennan's papers is denied, without prejudice, except to the extent that public access will continue to be limited, subject to application of any entity to lift the restriction.

**[End of Order]**

**This Order has not been prepared for publication and is not intended for publication.**

**Distribution List**

Margot Brennan
3825 Glenlake Drive
Decatur, GA  30134

Lynne Bernabei
Alan R. Kabat
Bernabei & Kabat, PLLC
1400 16th Street, N.W., Suite 500
Washington, D.C.  20036-2223

Robert Trauner
P.O. Box 421025
Atlanta, GA  30342

Robert A. Bartlett
Ragsdale, Beals, Seigler, et al.
2400 International Tower Peachtree Center
229 Peachtree Street, NE
Atlanta, GA  30303-1629

Kevin Keaveney
274 McLaren Gates Drive
Marietta, GA  30060

Daniel E. Raskin
Suite 114
325 Hammond Drive
Atlanta, GA  30328

Martin Ochs
Office of U.S. Trustee
362 Richard Russell Building
75 Ted Turner Drive, SW
Atlanta, GA  30303